# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Sharon Martin, individually and on Behalf of all others similarly situated in Missouri, | ) ) ) ) |
| Plaintiffs, | ) Case No.: 4:20-cv-415 ) |
| v. | ) ) |
| Jimmy John's, LLC and Jimmy John's Franchise, LLC | ) ) ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, 1453, Defendants Jimmy John's, LLC ("JJ LLC") and Jimmy John's Franchise, LLC ("JJF") (collectively, "Defendants") hereby remove this action from the Circuit Court of Jackson County, Missouri ("State Court") to the United States District Court for the Western District of Missouri. As grounds for removal, Defendants state as follows:[1]

## FACTUAL BACKGROUND

1. On January 4, 2020, Plaintiff Sharon Martin filed a putative class-action petition (hereinafter "Petition") in State Court, Case No. 2016-CV00408, against Defendants. The Petition alleges three counts against Defendants: (1) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020; (2) negligent misrepresentation; and (3) unjust enrichment.

2. A Notice of Removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim

---

[1] Pursuant to the United States District Court for the Western District of Missouri Local Rule 3.1, Defendants attach their Civil Cover Sheet hereto as **Exhibit 1**.

for relief." 28 U.S.C. § 1446(b)(1); *see also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) (concluding that a "courtesy copy" of the file-stamped complaint, which was faxed from Plaintiff's counsel to Defendant, was insufficient to trigger 30-day period for purposes of § 1446); *Dominick v. Midwestern Indem. Co.*, No. 14-5103, 2014 WL 12601512, at *4 (W.D. Mo. Oct. 2, 2014) (concluding that the 30-day period for purposes of § 1446 commences on the "date Defendant was formally served with process," not on the date of receipt of courtesy copy through email). Here, Plaintiff sent Defendants' registered agent a copy of the Summons and the Petition by certified mail on May 20, 2020, which Defendants' registered agent received on May 26, 2020. *See* Mo. Rev. Stat. § 506.150.4 (allowing for service of the Summons and the Petition to be effectuated through first-class mail upon return of a notice of acknowledgement within 30 days after mailing); Mo. R. Civ. P. 54.16 (same). A true and accurate copy of the Summons and the Petition are attached hereto as **Exhibit 2**. Although there is conflicting authority as to whether the date of receipt of the Summons and Petition through the mail, on the one hand, *or* the date of execution of acknowledgement following receipt of the Summons and the Petition through the mail, on the other, triggers the 30-day clock for purposes of § 1446(b)(1), this Notice is filed within 30 days of receipt of the Summons and Petition, and thus, under either interpretation, this Notice of Removal is timely. *Compare Bugg v. Wash. Mutual Bank*, No. 06-4196, 2006 WL 8438327, at *1–2 (W.D. Mo. Oct. 24, 2006) (stating that the receipt of the summons and the petition followed by return of the notice of acknowledgement triggers the 30-day clock for § 1446(b)), *with Quinlan v. Party City Corp.*, No. 19-CV-163, 2019 WL 1586561, at *2 (E.D. Mo. Apr. 12, 2019) (stating that the receipt of the summons and the petition by mail, without more, triggers the 30-day clock for § 1446(b)).

## VENUE

3. Venue is proper in this Court because the Western District of Missouri, Western Division, is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## JURISDICTION

4. The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over "class actions"[2] where (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (2) "the number of members of all proposed plaintiff classes in the aggregate is [more] than 100"; and (3) "the matter in controversy exceeds the sum or value of $5 [million], exclusive of interest and costs." 28 U.S.C. § 1332(d)(1), (2)(A), (5)(B); *see also Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 583 (8th Cir. 2017). All of these requirements are satisfied in the present case, and it is, therefore, removable under 28 U.S.C. § 1453(b).

## MINIMAL DIVERSITY

5. Under CAFA, this Court has original subject-matter jurisdiction "if any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). That requirement is met here.

6. Plaintiff alleges in the Petition that she is a Missouri resident. **Exh. 2**, ¶ 5. Plaintiff also alleges that she seeks to represent a class of "persons in Missouri who purchased"

---

[2] This action falls within CAFA's definition of "class action." 28 U.S.C. § 1332(d)(1)(B) (defining "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action"). In her Petition, Plaintiff alleges she filed this action under Missouri Rule of Civil Procedure 52.08, *see* **Exh. 2**, ¶ 24; and Rule 52.08 is the state analog to Federal Rule of Civil Procedure 23. *See* Mo. R. Civ. P. 52.08 committee notes ("Rule 52.08 is essentially identical to Rule 23, Fed.R.Civ.P.").

3

Jimmy John's Triple Chocolate Chunk Cookies ("Chocolate Chunk") and/or Jimmy John's Raisin Oatmeal Cookies ("Raisin Oatmeal") from Defendants. *See id.* at ¶ 24.

7. Plaintiff alleges in the Petition that Defendants are Delaware limited liability companies with their principal places of business in Illinois. *Id.* at ¶ 6.

8. Both Defendants are limited liability companies. As a general rule, a limited liability company's citizenship depends on the citizenship of its members. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019). Where a member of a limited liability company is itself a limited liability company, facts concerning the underlying member must also "be alleged in accordance with the rules applicable to each such type of entity, through however many layers of ownership there may be" until one reaches only individuals or corporations. *OHM Hotel Grp., LLC v. Dewberry Consultants, LLC*, No. 15-1541, 2015 WL 5920663, at *1 (E.D. Mo. Oct. 9, 2015); *see also Heckemeyer v. NRT Mo., LLC*, No. 12-1532, 2013 WL 2250429, at *1–2 (E.D. Mo. May 22, 2013) (following allegations of members of limited liability company through "layers of membership" until reaching corporation).

9. As set forth in the Affidavit of Jeffrey Vaughan ("Vaughan Affidavit"), JJF is a direct, wholly owned subsidiary of JJBC, LLC. **Exh. 3**, ¶ 2(a). JJBC, LLC, in turn, is a direct, wholly owned subsidiary of JJ LLC. *Id.* at ¶ 2(b). Next, JJ LLC is a direct, wholly owned subsidiary of Jimmy John's Holding Company, LLC. *Id.* at ¶ 2(c). And finally, Jimmy John's Holding Company, LLC is a direct, wholly owned subsidiary of IRB Holding Corporation. *Id.* at ¶ 2(d). A true and accurate copy of the Vaughan affidavit is attached hereto as **Exhibit 3**.



10. JJF is a Delaware limited liability company with its principal place of business in Illinois. *Id.* at ¶ 2(a). JJBC, LLC is a Delaware limited liability company with its principal place of business in Illinois. *Id.* at ¶ 2(b). JJ LLC is a Delaware limited liability company with its principal place of business in Illinois. *Id.* at ¶ 2(c). Jimmy John's Holding Company, LLC is a Delaware limited liability company with its principal place of business in Georgia. *Id.* at ¶ 2(d). IRB Holding Corporation is a Delaware corporation with its principal place of business in Georgia. *Id.* at ¶ 2(e); *see also* 28 U.S.C. § 1332(c)(1) (stating a corporation is citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

11. Because IRB Holding Corp. is, for diversity purposes, a citizen of Delaware and Georgia (*see* **Exh. 3**, ¶ 2(e)), JJF and JJ LLC are also citizens of Delaware and Georgia. *See Jet Midwest Int'l Co.*, 932 F.3d at 1104 ("The citizenship of non-incorporated entities like limited liability companies depends on the citizenship of their members."). As a result, there is minimal diversity between either JJF or JJ LLC, both citizens of Delaware and Georgia, on the one hand, and Plaintiff, a citizen of Missouri, on the other. *See* 28 U.S.C. § 1332(d)(2)(A); *see also Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 959 (8th Cir. 2014) (requiring "minimal (as opposed to complete) diversity" for jurisdiction under CAFA, which means "*any* class member and *any* defendant are citizens of different states" (emphasis added) (quoting *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)).

12. Alternatively, CAFA contains a citizenship rule for "unincorporated associations" when assessing diversity. *See* 28 U.S.C. § 1332(d)(10) (explaining that for purposes of § 1332(d) and § 1453, an "unincorporated association" is deemed to be a citizen of "the State where it has its principal place of business and the State under whose laws it is organized.").

Minimal diversity would be satisfied under this standard as well, as JJF and JJ LLC are both incorporated in Delaware with their principal places of business in Illinois. **Exh. 3**, ¶¶ 2(a), (c); *see also* **Exh. 2**, ¶ 6 (alleging the same).[3]

## NUMBER OF MEMBERS OF PROPOSED CLASS

13. Under CAFA, this Court has original subject-matter jurisdiction if "the number of members of all proposed plaintiff classes in the aggregate is [more] than 100." 28 U.S.C. § 1332(d)(5).

14. This requirement may be shown on the face of the pleadings. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 932 (8th Cir. 2013) (determining the numerosity requirement based on "the face of her Complaint at the time the action was removed"). Here, Plaintiff seeks to represent "[a]ll persons in Missouri who purchased Jimmy's All Natural Raisin Oatmeal Cookies and/or Jimmy's All Natural Triple Chocolate Chunk Cookie in the five years preceding the filing of this Petition." **Exh. 2**, ¶ 24. Plaintiff further asserts that "[u]pon information and belief, the Class consists of thousands of purchasers." *Id.* at ¶ 26. This allegation is sufficient to satisfy this CAFA requirement.

15. Extrinsic evidence—which would be admissible for this purpose even if Plaintiff had not admitted the 100-person threshold is met—also confirms that Plaintiff's proposed class would contain more than 100 members. As set forth in the Vaughan Affidavit, there were **1,982,524** transactions at Jimmy John's restaurants in Missouri that included the sale of one or

---

[3] Although sibling circuits have addressed the issue, the Eighth Circuit has not addressed whether limited liability companies, like Defendants, are "unincorporated associations" for purposes of 28 U.S.C. § 1332(d)(10). *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010) (determining that a limited liability company is an "unincorporated association" within the meaning of § 1332(d)(10)); *see also O'Shaughnessy v. Cypress Media, LLC*, No. 13-0947, 2014 WL 1791065, at *4 (W.D. Mo. May 6, 2014) (adopting the rule in Ferrell that limited liability companies are "unincorporated associations").

6

more Chocolate Chunk Cookies and/or Raisin Oatmeal Cookies between November 1, 2016 and January 4, 2020.[4] **Exh. 3**, ¶ 6. Without question, those **1,982,524** transactions between November 1, 2016 and January 4, 2020 were made by well more than 100 putative class members.

## AMOUNT IN CONTROVERSY

16. To establish subject-matter jurisdiction under CAFA, the amount in controversy must exceed $5 million, less costs and interest, and that threshold is also readily met here. *See* 28 U.S.C. § 1332(d)(2).

17. The removing party bears the burden of establishing this requirement by a preponderance of the evidence. *See Dammann*, 856 F.3d at 583. Under this standard, the removing party's notice of removal must contain only "a plausible allegation" that the amount in controversy exceeds the jurisdictional amount. *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019). Thus, the jurisdictional question is "not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Faltermeier v. FCA USA LLC*, 899 F.3d 617, 621 (8th Cir. 2019) (emphasis added) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). That is, when the removing party plausibly alleges that the class might recover actual damages, punitive damages, and attorneys' fees aggregating more than $5 million, the case belongs in federal court unless "it is *legally impossible* for the plaintiff to recover that much." *Pirozzi*, 938 F.3d at 984 (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)); *see also Dammann*, 856 F.3d at 584 (stating

---

[4] The "All-Natural" claims at issue in the case appeared on the packaging for the Chocolate Chunk and Raisin Oatmeal Cookies beginning in the middle of the class period alleged in the Petition, on approximately November 1, 2016. As such, this Notice calculates the sales and number of transactions of Chocolate Chunk and Raisin Oatmeal Cookies between November 1, 2016 and January 4, 2020, the date the Petition was filed.

that "legally impossible standard" is not met even if "highly improbable that the [p]laintiffs will recover the amounts [d]efendants have put into controversy" (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)).

18. The removing party's burden is "a pleading requirement, not a demand for proof." *Pirozzi*, 938 F.3d at 984 (quoting *Spivey*, 528 F.3d at 986). In support of that burden, the removing party may introduce its own affidavits, declarations, or other documentation to satisfy the preponderance of the evidence standard. *See Raskas*, 719 F.3d at 888.

19. Additionally, the removing party does not need to "confess liability in order to show that the controversy exceeds the threshold." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012) (quoting *Spivey*, 938 F.3d at 986). To be clear, Defendants dispute that Plaintiff (or any putative class member) is entitled to any recovery. But for purposes of the removal analysis, Defendants need only show that "a fact finder *might*" conclude Plaintiff is entitled to damages exceeding $5 million. *Faltermeier*, 899 F.3d at 621 (quoting *Kopp*, 280 F.3d at 885).

20. **ACTUAL DAMAGES.** Plaintiff is very deliberate in describing and limiting the claimed damages at issue, in an attempt to avoid CAFA jurisdiction. Specifically, Plaintiff alleges that the amount in controversy is "less than $75,000" for Plaintiff and "less than $5 [million] in the aggregate." **Exh. 2**, ¶ 7; *see also id.* at ¶ 8 (stating that the damages, including attorneys' fees and costs, will not "exceed $4,999,999" and is less than $5 million to avoid the "minimum threshold to create federal court jurisdiction"); *id.* at ¶ 54(c) (praying for damages in amount that "will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class"). But Plaintiff's proposed limitation of the actual damages does not affect removability under CAFA. First, the Supreme Court in *Standard Fire Insurance Company v. Knowles*, 568

8

U.S. 588 (2013) held that a named plaintiff cannot prevent removal to federal court under CAFA by stipulating, prior to class certification, that the named plaintiff and the class will not seek damages in excess of CAFA's $5 million jurisdictional threshold "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." 568 U.S. at 593, 596. Similarly, although not directly addressed by the Eighth Circuit, sibling circuits have held that a named plaintiff cannot prevent removal to federal court under CAFA by merely alleging, without stipulating, in the petition that the amount of damages do not exceed $5 million. *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 772–73 (7th Cir. 2014) (following the holding in *Standard Fire* for non-stipulated allegations in the petition); *see also Boegeman v. Bank Star*, No. 12-1514, 2012 WL 4793739, at *3 (E.D. Mo. Oct. 9, 2012) (finding that the named plaintiff's non-stipulated allegation in the petition limiting damages to less than $5 million was insufficient to defeat jurisdiction under CAFA prior to *Standard Fire*). As such, Plaintiff's allegations that she will not seek more than $5 million in actual damages does not affect removability under CAFA. *See* **Exh. 2**, ¶¶ 7–8, 54(c). Instead, removability will turn on the actual damages available, as well as attorneys' fees and punitive damages.

    a. **Missouri's Merchandising Practices Act (Count I).** Plaintiff's first count of the Petition alleges violations of the MMPA. *See* **Exh. 2**, ¶¶ 34–39. Compensatory damages on an MMPA claim are measured by the benefit-of-the-bargain rule, "which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009). Here, Plaintiff pleads that the "ascertainable loss" associated with the violations is "the difference between the actual value of the products (containing highly processed and artificial

9

Case 4:20-cv-00415-RK   Document 1   Filed 05/27/20   Page 9 of 14

ingredients) and the value of the products if they had been as represented (containing all natural or minimally processed ingredients)." **Exh. 2**, ¶ 38. Moreover, Plaintiff alleges that the total value of her individual loss is "at most" equal to "the refund of the purchase price she paid for the Cookies." *Id.* at ¶ 8. In other words, Plaintiff alleges that *but for* the "All-Natural" Labels, Plaintiff, and those similarly situated, would not have purchased the Chocolate Chunk and Raisin Oatmeal Cookies, meaning that the Cookies had no value to the purchasers. As stated in the Vaughan Affidavit, the total amount of sales of Chocolate Chunk and Raisin Oatmeal Cookies with "All-Natural" Labels during the relevant period is **$4,683,611**, which becomes the total amount of damages pleaded in the Petition for the MMPA claim. *See* **Exh. 3**, ¶ 7.

b. **<u>Negligent Misrepresentation (Count II).</u>** Plaintiff's second count of the Petition alleges common law negligent misrepresentation. **Exh. 2**, ¶¶ 40–48. Plaintiff alleges she "suffered an economic loss" in paying a "price premium" for the Chocolate Chunk and Raisin Oatmeal Cookies that she would not have paid absent the alleged misrepresentations on the "All-Natural" Labels. *Id.* at ¶ 47. Like the damages alleged in the MMPA claim, she alleges Defendants deprived her of the benefit of the bargain, which equates to "less value than was reflected in the price [] paid for" the Cookies. *Id.* at ¶ 48. She alleges the total value of the loss is "at most" equal to "the refund of the purchase price she paid for the Cookies." *Id.* at ¶ 8. Thus, like the MMPA claim, this claim would result in **$4,683,611** in total damages. **Exh. 3**, ¶ 7.

c. **Unjust Enrichment (Count III).** Plaintiff's third count of the Petition alleges unjust enrichment. **Exh. 2**, ¶¶ 49–53. Plaintiff alleges that she, and those similarly situated, "conferred a benefit" on Defendants. *Id.* at ¶ 50. She further alleges that Defendants "appreciated the benefit" because without Plaintiff, and those similarly situated, Defendants would have no sales. *Id.* at ¶ 51. Thus, she suggests that Defendants must "disgorge" the proceeds from the sales of the Cookies. *Id.* at ¶ 54(c). That is, this claim would result in **$4,683,611** in total damages—the total amount of sales of a Chocolate Chunk and Raisin Oatmeal Cookies with "All-Natural" Label between January 4, 2015 and January 4, 2020. **Exh. 3**, ¶ 7.

21. **ATTORNEYS' FEES.** Plaintiff also seeks recovery of her attorneys' fees. **Exh. 2**, ¶ 54(e). Attorneys' fees are included in the amount in controversy. *See Pirozzi*, 938 F.3d at 984 (considering attorneys' fee in amount in controversy for CAFA jurisdiction involving MMPA claim). Here, Plaintiff again attempts to preemptively limit the attorneys' fees and costs that she will seek. **Exh. 2**, ¶ 54(e) (pleading that she will not seek attorneys' fees and costs that "exceed $75,000 per Class Member and/or $4,999,999 for the entire Class."). But as with actual damages, a plaintiff may not stipulate to a limitation on the amount of attorneys' fees in order to defeat CAFA jurisdiction. *See Faltermeier*, 899 F.3d at 621 (applying the rule in *Standard Fire*, 568 U.S. at 596—that the plaintiff may not stipulate to limiting damages— to attorneys' fees allegation). As such, Plaintiff's allegation that she will not seek more than $5 million in attorneys' fees does not affect the removability for CAFA. Further, although Defendants dispute that Plaintiff is entitled to recover attorneys' fees, Plaintiff has asserted at least one cause of action under which attorneys' fees may be awarded. Mo. Rev. Stat. § 407.025.1 (allowing a

11

court the discretion to award attorneys' fees to the prevailing party in cases alleging violations of the MMPA). When determining how fees should be accounted for in evaluating CAFA jurisdiction on an MMPA claim, this Court has used a 33% fee for purposes of the calculation. *See Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013). Using the **$4,683,611** damage figure above, a fee award of 33% would yield **$1,545,591** in fees, for a total award of **$6,229,202**, well in excess of the $5 million threshold.[5]

22. Based on Plaintiff's allegations in the Petition and information set forth in the Vaughan Affidavit, Plaintiff's proposed class claims place in controversy an amount far exceeding the $5 million jurisdictional threshold. Moreover, because there are more than 100 members of the putative class, minimal diversity, and an amount in controversy greater than $5 million, there is subject matter jurisdiction in this Court. *See* 28 U.S.C. § 1332(b).

---

[5] Plaintiff attempts to disavow the recovery of punitive damages in the Petition to circumvent CAFA; however, it is undisputed that Plaintiff could potentially seek leave to amend the Complaint to incorporate punitive damages, which are otherwise recoverable under the MMPA. **Exh. 2**, ¶ 12; *see* Mo. Rev. Stat. § 407.025.1. While published Eighth Circuit authority does not appear to explicitly address whether a plaintiff may effectively disavow punitive damages solely to avoid CAFA jurisdiction, the Supreme Court's decision in *Standard Fire* informs that the potential measure of punitive damages should be included in the amount in controversy for purposes of CAFA, even where not requested or disavowed in the initial pleading. This is because a disavowal or failure to request punitive damages "does not bind anyone" in the putative class, and thereby, does not reduce the value of the putative-class claim that may be later amended. 568 U.S. at 593; *see also Back Doctors Ltd. v. Metro. Prop. & Casualty Ins. Co.*, 637 F.3d 827 (7th Cir. 2011) (finding punitive damages are properly included in the amount in controversy for purposes of CAFA because although the plaintiff "did not expressly ask for a punitive award and did not include in the complaint allegations of wanton or egregious conduct," the plaintiff "does not cite any decision . . . that such an omission from a complaint makes a punitive award impossible").

In any event, here the removability of this case does not rely, in any measure, upon the Court's inclusion or exclusion of punitive damages in the jurisdictional calculation. To the contrary, proper evaluation of the potential compensatory damages and attorneys' fees at issue sufficiently and independently support the aggregation of potential damages well in excess of the $5 million jurisdictional threshold.

## COMPLIANCE WITH 28 U.S.C. § 1446

23. Pursuant to 28 U.S.C. § 1446(a), Defendants have attached all process, pleadings, and orders served in State Court. *See* **Exhibit 4**, attached hereto.

24. Pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is filed within 30 days of service on Defendants of the pleadings setting forth the claims for relief upon which the State Court action is based.

25. Pursuant to 28 U.S.C. § 1446(b)(3), Defendants will promptly provide written notice of the removal of the state court action to Plaintiff, through her attorneys of record, and to the Circuit Court of Jackson County, Missouri.

WHEREFORE, Defendants respectfully give notice that the action referred to above is removed from the State Court to this Court.

Respectfully submitted,

*/s/ Sara A. Fevurly*
Michael S. Hargens  MO Bar No. 51077
Sara A. Fevurly  MO Bar No. 69076
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: 816.983.8000
Fax: 816.983.8080
Email: michael.hargens@huschblackwell.com
 sara.fevurly@huschblackwell.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a copy of the above was served on May 27, 2020, via the Court's electronic filing system and the U.S. Postal Service, on the following counsel of record:

    R. John Azimi
    136 E. Walnut, Ste. 300
    Independence, MO 64050

    and

    Jeff Lingwall
    4968 N. Ice Springs Way
    Boise, ID 83713

                                     */s/ Sara A. Fevurly*
                                     Attorney for Defendants