# EXHIBIT 2



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CORY L FEATKINS | Case Number: 2016-CV00408 | |
|---|---|---|
| Plaintiff/Petitioner:<br>SHARON K MARTIN | Plaintiff's/Petitioner's Attorney/Address:<br>REZA JOHN AZIMI-TABRIZI<br>1361 WALNUT<br>STE 300<br>INDEPENDENCE, MO 64050 | |
| | VS. | |
| Defendant/Respondent:<br>JIMMY JOHN'S LLC | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to:   JIMMY JOHN'S LLC
                            Alias:

C/O BRIAN SMITH
311 S WACKER DR STE 3000
CHICAGO, IL 60606



**COURT SEAL OF**

**JACKSON COUNTY**

You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

03-APR-2020
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CORY LEE ATKINS | Case Number: 3016-CV00408 | |
|---|---|---|
| Plaintiff/Petitioner:<br>SHARON K MARTIN | Plaintiff's/Petitioner's Attorney/Address:<br>REZA JOHN AZIMI-TABRIZI<br>1361 WALNUT<br>STE 300<br>INDEPENDENCE, MO 64050 | |
| | vs. | |
| Defendant/Respondent:<br>JIMMY JOHN'S LLC | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to:  JIMMY JOHNS FRANCHISE LLC
                    Alias:

COBRIAN A SMITH
311 S WACKER DR STE 3000
CHICAGO, IL 60606



**COURT SEAL OF**

**JACKSON COUNTY**

You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

03-APR-2020
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

**SUMMONS/GARNISHMENT SERVICE PACKETS
ATTORNEY INFORMATION**

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

Revised 7/3/13                        Service Information - Attorney

Electronically Filed - Jackson - Independence - January 04, 2020 - 07:38 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY**
**STATE OF MISSOURI**

Sharon Martin, individually and on )
behalf of all others similarly situated in )
Missouri, )
     )
        Plaintiffs, )
v. )
     )   Case No.: _____
Jimmy John's, LLC, and )
Jimmy John's Franchise, LLC )
     )   Division: _____
        Defendants. )
     )   JURY TRIAL DEMANDED
Serve: Jimmy John's LLC; )
        Jimmy John's Franchise, LLC )
        2212 Fox Dr. )
        Champaign, IL 61820 )

**PETITION AND JURY DEMAND**

1. Plaintiff, Sharon Martin, individually and on behalf of all others similarly situated in Missouri, alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

**NATURE OF THE CASE**

2. This case arises out of Defendant Jimmy John's LLC and Defendant Jimmy John's Franchise, LLC (together Jimmy John's or "Defendants") deceptive, unfair, and false merchandising practices regarding its Jimmy's All Natural Raisin Oatmeal Cookie and Jimmy's All Natural Triple Chocolate Chunk Cookie (the "Cookies").

3. The labels on the Cookies state the Cookies are "All Natural*." Small print on the bottom of the label states "*Minimally processed, no artificial ingredients." Despite these claims, the cookies contain a long list of highly processed or artificial and non-natural ingredients, including

refined flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid, sugar, milk powder, soy lecithin, and baking soda.

4. Plaintiff brings this case to recover damages for Defendants' false, deceptive, and misleading marketing and advertising in violation of the Missouri Merchandising Practices Act ("MMPA") and Missouri common law.

## **PARTIES**

5. Plaintiff Sharon Martin is a resident of Blue Springs, Missouri. On at least one occasion during the Class Period (defined below), including on December 31, 2018, Plaintiff purchased the Cookies at a Jimmy John's store located in Jackson County, Missouri, for personal, family, or household purposes and for evaluative purposes of this lawsuit. The purchase price was $1.75 each. Plaintiff's claim is typical of class members in this regard.

6. On information and belief, Jimmy John's LLC and Jimmy John's Franchise, LLC are Delaware limited liability companies headquartered in Champaign, Illinois. Defendants have not designated a registered agent in Missouri. Therefore, Defendants can be served by mail pursuant to Missouri Rules of Civil Procedure 54.16.

## **JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of the Court. The amount in controversy, however, is less than $75,000 per Plaintiff and Class Member individually and less than $5,000,000 in the aggregate.

8. Plaintiff believes and alleges that the total value of her individual claims is, at most, equal to the refund of the purchase price she paid for the Cookies. Moreover, because the value of Plaintiff's claims is typical of all class members with respect to the value of the claim, the total

damages of Plaintiff and Class Members, inclusive of costs and attorneys' fees, will not exceed $4,999,999 and is far less than the five million dollar ($5,000,000) minimum threshold to create federal court jurisdiction. There is therefore no diversity or CAFA jurisdiction for this case.

9. Defendants cannot plausibly allege that they had sufficient sales of the Cookies in Missouri during the Class Period to establish an amount in controversy that exceeds CAFA's jurisdictional threshold.

10. This Court has personal jurisdiction over Defendants pursuant to Missouri Code § 506.500, as Defendants have had more than minimum contact with the State of Missouri and have availed themselves of the privilege of conducting business in this state. In addition, as explained below, Defendants have committed affirmative tortious acts within the State of Missouri that gives rise to civil liability, including distributing the fraudulent Cookies for sale throughout the State of Missouri.

11. Venue is proper in this forum pursuant to Missouri Code § 508.010 because Plaintiff's injury occurred in Jackson County.

12. Plaintiff and Class Members do not seek to recover punitive damages or statutory penalties in this case.

13. This pleading demands unliquidated damages. Accordingly, it is intended to limit recovery to an amount less than that required for diversity or CAFA jurisdiction in federal court.

## ALLEGATIONS OF FACT

14. Defendants produce, market, and sell foodstuffs—including the Cookies—throughout the United States, including Missouri.

15. As part of its packaging, labeling, and sales, Defendants affixed labels to the Cookies that claim the Cookies are all natural, with minimally processed ingredients.

Electronically Filed - Jackson - Independence - January 04, 2020 - 07:38 PM





16. In fact, the Cookies contain numerous highly processed and/or artificial ingredients.

17. These include:

    a. Wheat flour. Enriched wheat flour is a highly processed material made by

    processing grain to a superfine level and removing the outer portion of the seed.

Electronically Filed - Jackson - Independence - January 04, 2020 - 07:38 PM

This removes nutrients, some of which are then artificially reintroduced (see niacin, reduced iron, thiamine mononitrate, riboflavin, and folic acid below).[1]

b. Niacin. Niacin is a white, crystalline acid that as a food additive is artificially derived through chemical processes at large industrial facilities.[2] It is added to enriched flour due to the number of nutrients stripped from wheat during the industrial milling process.

c. Reduced iron. Reduced iron is a metallic powder artificially derived through chemical processes, which "reduce" oxidized iron by a reaction with chemical compounds. Then, like niacin, it is added to enriched flour due to nutrient stripping during the intensive milling process.

d. Thiamine mononitrate is artificially "prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid." 21 CFR § 184.1878. The results of this artificial chemical process are then introduced into refined flour as an additive.

e. Riboflavin. Riboflavin is a vitamin artificially produced at industrial levels by fermenting the fungus *Ashbya gossypii* in a chemical compound comprised of, e.g., glucose and corn steep liquor.[3]

f. Folic acid. Folic acid is a man-made, artificial version of folate, a vitamin occurring in green vegetables and citrus.[4] It is synthetic, derived at the industrial scale through chemical processes for use as a food additive.

---

[1] *See, e.g.,* 21 C.F.R. § 137.165 (regulating enriched flour).
[2] *E.g.,* Lonza, Niacin and Niacinamide: A Commitment to Quality (2015), http://www.ethorn.com/ssw/files/Lonza.pdf.
[3] *E.g.,* Fred W. Tanner and Virgil F. Pfeifer, *Production of Riboflavin by Fermentation*, USDA, https://naldc.nal.usda.gov/download/IND43894159/PDF.

g. Sugar. Sugar is a highly processed food. Sugar is refined through a multi-step process, first by removing liquor from sugar crystals, mixing raw sugar with syrup, processing the result through a centrifuge, and then decolorizing. One popular decolorizing technique pumps sugary liquid through granular activated carbon, another uses ion exchange resin (a polymer). After decolorization, water is boiled off to allow sugar crystals to grow. This is a highly refined, multi-step process far removed from the food's natural state.

h. Brown sugar. Brown sugar is typically highly processed sugar mixed with molasses, itself a highly processed substance left from the sugar refining process.

i. Milk powder and dry milk. Milk powder and dry milk are highly processed ingredients. They are made by taking pasteurized milk, evaporating it, and then spraying the concentrate into heat which solidifies the milk particles. (Milk powder contains more protein than dry milk, but the processing steps are similar.) These highly refined foods undergo extensive processing.

j. Soy lecithin. Soy lecithin is a highly refined food additive. It is made by … "degumming crude soy oil, [by adding] steam … in a batch or continuous process. The emulsion is then agitated … as the phosphatides hydrate and agglomerate, forming a heavy oil-insoluble sludge, which is separated from the oil by use of a centrifuge. The sludge coming from the degumming centrifuge … may then be bleached once or twice, typically with hydrogen peroxide, to reduce its color from brown or beige to light yellow. Fluidizing additives such as soy oil, fatty acids, or

---

[4] *E.g.*, https://medlineplus.gov/ency/article/002408.htm; https://www.healthline.com/nutrition/folic-acid-vs-folate#section3.

7

calcium chloride can then be added …. Finally the product is film or batch dried."[5]

k.  Baking soda. Baking soda is typically artificially made by dissolving soda ash in water, which is then treated with carbon dioxide. Baking soda, or sodium bicarbonate, then precipitates from the solution.

18. In sum, the Cookies contain a long list of ingredients reasonable consumers would consider non-natural, artificial, and/or highly processed, in contradiction of the claims on the front of the labels.[6]

19. Defendants then placed the Cookies with the misleading labels into the stream of commerce, where they were purchased by Plaintiff and Class Members.

20. Defendants' purpose in using the misleading labels was to increase its profits by promising consumers healthy, minimally processed ingredients while delivering cheaper, less healthy, highly processed ingredients. Reasonable consumers expecting the promised natural, minimally processed ingredients thus paid a price premium for the Cookies due to Defendants' misrepresentations.

21. Others making "minimally processed" claims about related products are clear to exclude the very ingredients Defendants claim are "minimally processed." For example, the Lunchables depicted below similarly state "natural" on their label, and similarly caveat this with "minimally

---

[5] http://www.soyinfocenter.com/HSS/lecithin1.php.
[6] Jimmy John's own website also makes this distinction. *See* https://www.jimmyjohns.com/about-us/our-food/ (visited Jan. 4, 2020) (identifying meat, but not cookies, as "natural" and "minimally processed", while noting the caramel coloring on the meat as *not* minimally processed). Like many of the ingredients in the cookies, caramel coloring is typically made by highly refining carbohydrates. *See, e.g.*, https://labdoor.com/article/caramel-color-an-overview (visited Jan. 4, 2020).

processed" *but* note "except for crackers and treat."[7] The crackers and treat contain many of the same ingredients Defendants claim are "minimally processed."



**Ingredients**

Vanilla Creme Sandwich Cookie (Unbleached Enriched Flour [Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate (Vitamin B1), Riboflavin (Vitamin B2), Folic Acid], Sugar, Soybean Oil, Palm Oil, High Fructose Corn Syrup, Cornstarch, Salt, Leavening [Sodium Bicarbonate, Monocalcium Phosphate], Natural and Artificial Flavor, Soy Lecithin [Emulsifier], Beta Carotene [for Color]). Hickory Smoked Uncured Ham - Chopped and Formed, Contains 17% Seasoning Solution, No Added Nitrates or Nitrites Except Those Naturally Occuring in Sea Salt, and Cultured Celery Juice (Ham, Water, Cultured Dextrose, Contains Less than 2% of Sea Salt, Honey, Vinegar, Cultured Celery Juice, Cherry Powder). White Cheddar Cheese (Pasteurized Cultured Milk, Salt, Enzymes). Crackers (Enriched Flour [Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin, Folic Acid], Palm Oil, Sugar, Salt, Baking Soda, Whey [from Milk], Soy Lecithin, Natural Flavor).

22. Defendants' misrepresentations violate the MMPA's prohibition of the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material

---

[7] https://www.citymarket.com/p/lunchables-natural-uncured-ham-cheddar-cheese/0004470009938 (visited Jan. 4, 2020). *See also* https://www.hy-vee.com/grocery/PD46342414/Hormel-Natural-Choice-Turkey-Cheddar-Cheese-and-Crackers (visited Jan. 4, 2020) (making similar "natural" and "minimally processed" label claims while excluding crackers).

fact in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020, RSMo.

23. While FDA regulations govern some relevant label aspects, FDA labeling regulations do not address the totality of the misleading label claims, and thus do not preempt Missouri law prohibiting deceptive advertising.

## CLASS ALLEGATIONS

24. Pursuant to Missouri Rule of Civil Procedure 52.08 and § 407.025.2 of the MMPA, Plaintiff brings this action on her own behalf and on behalf of a proposed class of all other similarly situated persons ("Class Members" of the "Class") consisting of:

> All persons in Missouri who purchased Jimmy's All Natural Raisin Oatmeal Cookie and/or Jimmy's All Natural Triple Chocolate Chunk Cookie in the five years preceding the filing of this Petition (the "Class Period").

25. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

26. Upon information and belief, the Class consists of thousands of purchasers. Accordingly, it would be impracticable to join all Class Members before the Court.

27. There are numerous and substantial questions of law or fact common to all of the members of the Class and which predominate over any individual issues. Included within the common question of law or fact are:

a. Whether the Cookies' labels are false, misleading, and deceptive;

b. Whether Defendants violated the MMPA by selling the Cookies with false, misleading, and deceptive representations;

c. Whether Defendants' acts constitute deceptive and fraudulent business acts and practices or deceptive, untrue, and misleading advertising; and

d. The proper measure of damages sustained by Plaintiff and Class Members.

28. The claims of the Plaintiff are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members and there is a sufficient relationship between the damage to Plaintiff and Defendants' conduct affecting Class.

29. Members and Plaintiff have no interests adverse to the interests of other Class Members.

30. Plaintiff will fairly and adequately protect the interests of Class Members and has retained competent and experienced counsel.

31. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b. Absent a Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoys its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants

committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendants have been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendants.

32. Because Plaintiff seeks relief for the entire Class, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual member of the Class, which would establish incompatible standards of conduct for Defendants.

33. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudication and may impair or impede their ability to protect their interests. As a consequence, class treatment is a superior method for adjudication of the issues in this case.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Violation of Missouri's Merchandising Practices Act

34. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

35. Missouri's Merchandising Practices Act (the "MMPA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020, RSMo.

36. The MMPA further provides for a civil action to recover damages in § 407.025.1, RSMo, as follows:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

37. Defendants' conduct constitutes the act, use, or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that the label of the Cookies leads consumers to believe that the Cookies contains only natural, minimally processed ingredients, which they do not. The products were therefore worth less than the products as represented.

38. Plaintiff and Class Members purchased the Cookies for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the products (containing highly processed and artificial ingredients) and the value of the products if they had been as represented (containing all natural or minimally processed ingredients).

39. Defendants' unlawful practices have caused similar injury to Plaintiff and numerous other persons. § 407.025.2.

**Second Claim for Relief**
**Negligent Misrepresentation**

40. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

41. Defendants have negligently represented that the Products contain minimally processed and natural ingredients. In fact, the Products contain a long list of highly processed, non-natural, and artificial ingredients.

42. Such representation was made by Defendants with the intent that Plaintiff and Class Members rely on such representation in purchasing the Product.

43. As a result, Defendants have failed to take ordinary care and misrepresented a material fact to the public, including Plaintiff and Class Members, about the Product.

44. Defendants knew or should have known that these omissions and affirmative statements would materially affect consumers' decisions to purchase the Products.

45. Reasonable consumers relied on Defendants' representations set forth herein, and, in reliance thereon, purchased the Product.

46. The reliance is reasonable and justified in that Defendants appeared to be, and represented itself to be, reputable businesses.

47. Plaintiff and Class Members suffered an economic loss by paying a price premium for the Product than they would not have paid absent Defendants' misrepresentations.

48. As a direct and proximate result of these misrepresentations, Plaintiff and Class Members were induced to purchase and consume the Products, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they

have spent money on Products that had less value than was reflected in the price they paid for the Products.

### Third Claim for Relief
### Unjust Enrichment

49. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

50. Plaintiff and the Class Members conferred a benefit on Defendants in that they purchased the Cookies that were manufactured, distributed, and sold by the Defendants.

51. Defendants appreciated the benefit because, were consumers not to purchase the Cookies, Defendants would have no sales and would make no money from the Cookies.

52. Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations about the Cookies.

53. Equity cannot in good conscience permit Defendants to be economically enriched for such actions at Plaintiff and Class Members' expense and in violation of Missouri law, and therefore restitution and/or disgorgement of such economic enrichment is required.

### PRAYER FOR RELIEF

54. WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, prays the Court:

    a.   Grant certification of this case as a class action;

    b.   Appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

    c.   Award compensatory damages to Plaintiff and the proposed Class in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class, or,

alternatively, require Defendants to disgorge or pay restitution in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

d.   Award pre- and post-judgment interest in an amount which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class;

e.   Award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000 per Class Member and/or $4,999,999 for the entire Class; and

f.   For all such other and further relief as may be just and proper.

Dated this 4th day of January 2020.

Sharon Martin, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiff

Submitted By:

_/s/ R. John Azimi_
R. John Azimi        MO #48578
136 E. Walnut, Ste. 300
Independence, MO 64050
816-716-1120
jazimi@kansascitylawyer.co
ATTORNEY FOR PLAINTIFF AND PUTATIVE CLASS

_/s/ Jeff Lingwall_
Jeff Lingwall        MO #66043
4968 N. Ice Springs Way
Boise, ID 83713
203-654-9253
jeff@lingwallconsulting.com
ATTORNEY FOR PLAINTIFF AND PUTATIVE CLASS